Filed 5/8/13  P. v. Pohl CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C071860 |
| Plaintiff and Respondent, | (Super. Ct. No. 72006157) |
| v. | |
| CODY EDWARD POHL, | |
| Defendant and Appellant. | |

On September 8, 2010, defendant Cody Edward Pohl was charged with first degree burglary (two counts); second degree burglary; receiving stolen property (five counts); petty theft with priors (two counts); possession of methamphetamine; and misdemeanor possession of paraphernalia for injecting and ingesting a controlled substance.  As to the felonies charged, it was alleged that defendant had a prior strike.  As to the first degree burglary counts,  it was alleged that defendant had a prior serious felony conviction.

Defendant waived jury trial and the matter was then tried to the trial court.

On September 17, 2010, after some counts were dismissed,  the trial court found defendant guilty of one count of first degree burglary, two counts of second degree

1

burglary, receiving stolen property,  petty theft with a prior, possession of methamphetamine, and possession of paraphernalia .  The court found defendant not guilty of one count of petty theft.  The court found true that defendant had previously been convicted of robbery, a strike, and had served a prior prison term.

On November 12, 2010, the trial court entered "findings and statement of decision following court trial," which summarized the facts found by the court.  We set out parts of this statement as follows:

"Mirlaine B[.] [fn. omitted] and the defendant were married in 2002 and lived in North Shore, Lake Tahoe [on] Lake Forest Road.  Mirlaine's daughter from a previous relationship, Meline B[.], also resided in the home and had her own bedroom.

"In about 2008, Mirlaine and the defendant decided to build a home on a vacant lot [on] Alder Street in Tahoma. . . .  However, before the home was completely finished, they ran short of money after a falling out with their contractor.  Also, for the past three years the relationship between the defendant and Mirlaine had begun to sour as she noticed a change in his behavior. . . .  Finally, Mirlaine . . . cut off the defendant's money and stopped paying bills for the new home construction, which was in the defendant's name.  In response, the defendant told her that if she didn't give him money he would steal it from someone.

"On March 5, 2009, at a pawn shop in Reno, the defendant pawned a guitar belonging to M[eline] B[.] that she had kept in her closet in her bedroom at the residence on Lake Forest Road.  Previously, she had specifically informed the defendant that he was not allowed to enter her bedroom.  The defendant is charged with burglary of the bedroom in Count One.

"Mirlaine and her daughter became afraid of the defendant to the point that on March 15, 2009, Mirlaine obtained a restraining order against the defendant preventing him from coming to the residence and two days later she filed for divorce.

2

"By March 2009, the home under construction on Alder Street was nearly complete. . . . There was convincing evidence that following the issuance of the restraining order, the defendant began to live at the Alder Street residence.

"In mid-August 2009, someone stole three newspaper vending machines from various locations in the North Shore area, including one from the Fireside cafe area. Three weeks later, three more newspaper vending machines in the Tahoe area also turned up missing.

"Mirlaine had a cleaning business wherein she had been cleaning both . . . businesses and residences for the past 26 years. One of the commercial establishments that Mirlaine cleaned regularly was the Bridge Tender Restaurant in Tahoe City. . . . Earlier in their marriage, the defendant had helped Mirlaine clean at the Bridge Tender. In the restaurant's storage room there were two safes that the owners had set in cement to prevent their theft. Each safe was approximately two feet by two feet in size and weighed approximately 40-60 pounds. . . .

"Early on the morning of August 16, 2009, Mirlaine went to the Bridge Tender to clean and discovered that it had been burglarized, apparently sometime the night before. The Sheriff was summoned and it was determined that someone had forced open the front door of the business, broken away the cement [e]ncasing the safes, and taken them. . . . The restaurant manager estimated that the safes may have contained as much as $10,000. . . . The defendant is charged with [s]econd [d]egree [b]urglary of the Bridge Tender in Count Three.

"Mirlaine also cleaned at two lake front homes, units B and C, [on] West Lake Blvd[.] in Homewood. Unit C . . . served as a vacation rental that people could rent on a weekly basis. To gain access there was a key kept in a key box with a code. On occasion, however, Mirlaine found the units were left unlocked and . . . open. . . .

"Mirlaine had only been cleaning at Unit C since June 2009, but she had previously told the defendant about her job there. . . .

"On or about August 25th, Mirlaine went to Unit C to clean and discovered that the television was missing. . . . The missing television is large and heavy and takes two persons to move or carry it. . . .

"[On] August 25th, . . . a person named James Polce pawned the television . . . . On the back of the television set on one side, in an area where one would touch the television if two persons were carrying it, was the defendant's fingerprint. The defendant is charged with [f]irst [d]egree burglary of unit C in Count Two.

"On September 12, 2009, the defendant was observed to exit a Safeway store in Kings Beach without paying for groceries . . . . (Count Nine.)

"On September 2, 2009, investigators went to the . . . Alder Street residence and located in the backyard . . . one of the two safes taken during the Bridge Tender burglary. . . .

"Inside the Alder Street residence, detectives also found the six missing newspaper vending machines, as described above. The coin box of each had been broken open. (Count Four[.])

"About two blocks away from the Alder [Street] residence, in the woods, detectives found a Starter brand shoe [of which] the sole pattern matched exactly the shoe wear prints left at the scene of the Bridge Tender burglary.

"On September 23, 2009, the defendant was arrested and in a jacket that belonged to him was found a small, but usable, amount of methamphetamine and a smoking implement. (Counts Eleven and Twelve.)

"On October 2, 2009, detectives searched a wooded area of Rubicon Road and found the second safe taken during the Bridge Tender burglary. The safe had been opened by force and drilled. It obviously had been hit numerous times by a large object, such as a sledge hammer [*sic*]. The exterior of the safe is orange . . . , consistent with . . . orange . . . paint noted on [a] sledgehammer found at [the] Alder Street [residence].

4

"On October 8, 2009, detectives were led by James Polce to a location . . . where . . . some items that had been contained within the orange safe were found buried in the ground under a pile of rocks. During an interview with police and during his testimony, the defendant said he knew James Polce as a person he had allowed to reside in the Alder Street residence.

"At trial, the defendant testified and denied committing any of the charged offenses. . . .

"The Court found most, if not all, of the defendant's testimony incredible."

After denying defendant's motion to strike the strike, the trial court sentenced defendant to 13 years 4 months in state prison. The court purported to strike the five year prior prison term enhancement "in the interest of justice."

The trial court thereafter recalled the sentence pursuant to Penal Code section 1170, subdivision (d), because the court had concluded it lacked discretion to strike the prior prison term enhancement. The court then resentenced defendant to 14 years 4 months in state prison, changing its prior sentence in several regards.

On appeal, this court reversed defendant's conviction on second degree burglary, modified his conviction for first degree burglary to second degree burglary, reversed the true finding on the prior prison term allegation, remanded the matter for resentencing, and otherwise affirmed the judgment. (*People v. Pohl* (May 22, 2012, C066710) [nonpub. opn.].)

On remand, the trial court resentenced defendant to a state prison term of six years eight months. The court awarded defendant 624 days of presentence custody credit (416 actual days and 208 conduct days). The court imposed a $1,000 restitution fine and a suspended $1,000 restitution fine, a $200 court security fee, and a $150 criminal conviction assessment.

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and

determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant. Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

DISPOSITION

The judgment is affirmed.


         ROBIE        , Acting P. J.


We concur:



       MAURO       , J.



       DUARTE       , J.

6